LAW LIBRARY

NO. 29376

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

CHRISTOPHER J. YUEN, PLANNING DIRECTOR, COUNTY OF HAWAII,
Appellant-Appellant,
v.
BOARD OF APPEALS OF THE COUNTY OF HAWAII;
VALTA COOK, in his capacity as Chairperson
of the BOARD OF APPEALS OF THE COUNTY OF
HAWAII; and MARLENE E. CALVERT,
Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 07-1-0414)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Fujise, JJ.)

In a secondary appeal of an administrative decision involving an application for a water variance, Appellant-Appellant Christopher J. Yuen, Planning Director, County of Hawai'i, (Director) appeals from the Judgment filed on August 29, 2008 in the Circuit Court of the Third Circuit[1] (circuit court). Pursuant to its "Findings of Fact, Conclusions of Law, and Decision and Order Affirming the Board of Appeals of the County of Hawaii's Decision and Order Filed November 19, 2007" (FOF/COL/Order), the circuit court entered judgment in favor of Appellees-Appellees Board of Appeals of the County of Hawai'i (BOA); Valta Cook, in his capacity as Chairperson of the BOA (Cook); and Marlene E. Calvert (Calvert) and against Director.

On appeal, Director contends the following Conclusions of Law (COLs) in the circuit court's FOF/COL/Order are wrong:

(1) COLs 2 and 5, which state that the Calvert variance was required by law to be obtained before the formation,

---

[1] The Honorable Greg K. Nakamura presided.

operation, or expansion of a commercial enterprise under Hawaii Revised Statutes (HRS) § 91-13.5 (Supp. 2005);

(2)  COLs 8 and 9, which state that the Calvert variance application was automatically granted pursuant to HRS § 91-13.5; and

(3)  COL 10, which states that BOA's November 9, 2007 "Findings of Fact, Conclusions of Law, and Decision and Order Approving Variance Application No. 05-056" (BOA Decision and Order) was affirmed.

## I.  BACKGROUND

Calvert and her late husband owned 480 acres of land in the district of Ka'u, County of Hawai'i.  The property was developed in phases 1 and 2 for commercial purposes as Kahuku Country Estates Subdivision (KCES), and Calvert sold all of the lots within phases 1 and 2.  For each phase, Calvert obtained water waivers or variances from the County of Hawai'i.

Calvert proposed a third phase of development for KCES. On June 9, 2005, Calvert applied for a water variance from the County of Hawai'i for that phase.  The Hawai'i County Planning Department (Planning Department), however, did not officially deny Calvert's application until October 5, 2005  -- 58 days after the deadline for issuing a decision had passed.  On October 28, 2005, Calvert appealed Director's denial to BOA. After a hearing, BOA reversed Director's denial.  Director appealed the reversal to the circuit court, and the court reversed and remanded BOA's decision.

On remand, BOA ruled in favor of Calvert

> on the grounds that the Planning Director's decision was late and therefore automatically approved, . . . and in the alternative, that the decision denying the variance was arbitrary and capricious in that it failed to consider other relevant factors including the size of the catchment system, storage capacity and monthly rainfall data.

On December 18, 2007, Director appealed the ruling to the circuit court.  The circuit court affirmed "on the ground that the Planning Director's denial of the Calvert Variance Application was issued after the 60-day period for action on the

application had expired and that, as a result, the application was automatically granted pursuant to HRS § 91-13.5."  The circuit court did not address "other issues considered by the [BOA] in its Decision and Order."

Director timely appealed from the Judgment.

## II.    STANDARDS OF REVIEW

### A.    Administrative Agency Decisions-Secondary Appeals

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. In an appeal from a circuit court's review of an administrative decision the appellate court will utilize identical standards applied by the circuit court.  Questions of fact are reviewed under the "clearly erroneous" standard. In contrast, an agency's legal conclusions are freely reviewable.  An agency's interpretation of its rules receives deference unless it is plainly erroneous or inconsistent with the underlying legislative purpose.

Hawaii Teamsters & Allied Workers, Local 996 v. Dep't of Labor & Indus. Relations, 110 Hawai'i 259, 265, 132 P.3d 368, 374 (2006) (internal quotation marks and citations omitted).

### B.    Statutory Interpretation

Questions of statutory interpretation are questions of law to be reviewed de novo under the right/wrong standard.

Our statutory construction is guided by the following well established principles:

our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.  Moreover, the courts may resort to extrinsic aids in determining legislative intent.  One avenue is the use of legislative history as an interpretive tool.

[The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (internal quotation

marks, brackets, and ellipses omitted) (quoting <u>Guth v. Freeland</u>, 96 Hawai'i 147, 149-50, 28 P.3d 982, 984-85 (2001)).

### C.    Conclusions of Law

> [The appellate] court reviews the trial court's COLs de novo. A COL is not binding upon an appellate court and is freely reviewable for its correctness. Moreover, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.

<u>Bhakta v. County of Maui</u>, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (internal quotation marks, citations, and brackets in original omitted).

### III.    DISCUSSION

Director contends the circuit court's COLs 2 and 5 are wrong. COLs 2 and 5 provide:

> 2.    The Variance Application at issue in this appeal is a county application for approval required by law to be obtained before the formation, operation or expansion of a commercial enterprise under HRS § 91-13.5.
>
> . . . .
>
> 5.    The next question is whether the application for a variance constituted an "application for a business or development-related permit, license, or approval" for the purpose of HRS § 91-13.5 (2005). The Court determines that the mixed findings of fact and conclusions of law or conclusions of law that support the view the Calvert Variance Application was an "application for a business or development-related permit, license, or approval" as defined under HRS § 91-13.5(g)[2] were not clearly erroneous nor did they constitute errors of law. This is because the Calvert Variance Application was a "county application, petition, permit, license, certificate, or any other form of a request for approval required by law to be obtained prior to the formation, operation, or expansion of a commercial or industrial enterprise."

(Footnote not in original.) Director argues that the automatic approval provision of HRS § 91-13.5[3] does not apply to a variance

---

[2]    HRS § 91-13.5(g) in 2005 was HRS § 91-13.5(f).

[3]    HRS § 91-13.5 provides in relevant part:

> **§91-13.5 Maximum time period for business or development-related permits, licenses, or approvals; automatic approval; extensions.** (a) Unless otherwise provided by law, an agency shall adopt rules that specify a maximum time period to grant or deny a business or development-related permit, license, or approval;
>
> (continued...)

4

under Chapter 23 (Subdivisions) of the Hawai'i County Code 1983 (2005 Edition, as amended) (HCC) because (1) the statutory authority for the code, HRS § 46-1.5(13) (Supp. 2004), is not one of the enumerated sections under § 91-13.5 to which automatic approval applies and (2) applying automatic approval to county variances would defeat the purpose and intent of the HCC.

Director notes that a water variance is not a legal requirement for running a business and therefore cannot be "required by law to be obtained prior to the formation, operation, or expansion of a commercial or industrial enterprise." HRS § 91-13.5. Director further argues that the HCC imposes many obligations on subdividers of land, but there is no legal requirement that a business acquire a variance before subdividing. Director maintains that a variance is a distinct land use approval which permits the applicant to use his or her property in violation of the subdivision code and therefore it is

---

[3](...continued)
provided that the application is not subject to state administered permit programs delegated, authorized, or approved under federal law.

. . . .

        (c)    All such issuing agencies shall take action to grant or deny any application for a business or development-related permit, license, or approval within the established maximum period of time, or the application shall be deemed approved; provided that the delay in granting or denying an application caused by the lack of quorum at a regular meeting of the issuing agency shall not result in approval under this subsection; provided further that any subsequent lack of quorum at a regular meeting of the issuing agency that delays the same matter shall not give cause for further extension, unless an extension is agreed to by all parties.

. . . .

        (f)    For purposes of this section, "application for a business or development-related permit, license, or approval" means any state or county application, petition, permit, license, certificate, or any other form of a request for approval required by law to be obtained prior to the formation, operation, or expansion of a commercial or industrial enterprise, or for any permit, license, certificate, or any form of approval required under sections 46-4, 46-4.2, 46-4.5, 46-5, and chapters 183C, 205, 205A, 340A, 340B, 340E, 340F, 342B, 342C, 342D, 342E, 342F, 342G, 342H, 342I, 342J, 342L, and 342P.

likely that the Hawai'i legislature did not intend for HRS § 91-13.5's automatic approval provision to apply to variances.

BOA, Cook, and Calvert contend that COLs 2 and 5 are right. BOA argues that the legislative history behind HRS § 91-13.5 supports the extension of the automatic approval provision to Calvert's variance application. Calvert argues that the automatic approval provision of HRS § 91-13.5 applies to Calvert's variance application because the variance is "indispensable to moving forward with a commercial enterprise" and therefore is "required by law to be obtained prior to the formation, operation, or expansion of a commercial or industrial enterprise."

HRS § 91-13.5's automatic approval provision applies to those county applications "for approval <u>required by law</u> to be obtained prior to the formation, operation or expansion of a commercial . . . enterprise." HRS § 91-13.5(f) (emphasis added). Both BOA and Calvert argue for an expansive reading of this language. Calvert, in particular, argues that a variance is "required by law" if it is "indispensable to moving forward with a commercial enterprise." Calvert's interpretation of "required by law" would render HRS § 91.13.5's reach virtually limitless. Potentially any application, permit, license, or approval is "indispensable to moving forward with a commercial enterprise." Such a broad reading conflicts with the enumerated provisions under HRS § 91-13.5 that expressly limit the provision's reach: "'application for a business or development-related permit, license, or approval' means . . . any form of approval required under sections 46-4, 46-4.2, 46-4.5, 46-5, and chapters 183C, 205, 205A, 340A, 340B, 340E, 340F, 342B, 342C, 342D, 342E, 342F, 342G, 342H, 342I, 342J, 342L, and 342P."

The phrase "required by law" plainly and obviously refers to those legal requirements that precede the formation, operation, or expansion of a business. <u>Bhakta</u>, 109 Hawai'i at 208, 124 P.3d at 953 (internal quotation marks and citation

omitted) ("It is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning.") A variance application is not required by law because it is not an obligation imposed on the developer by the HCC as a prerequisite to subdivision. See HCC § 23-14 ("Variances from the provisions of this chapter may be granted; provided, that a variance shall not allow the introduction of a use not otherwise permitted within the district; and provided further that a variance shall not primarily effectuate relief from applicable density limitations.").

Because we conclude that a variance is not required by law prior to the formation, operation, or expansion of a business, we conclude that COLs 2 and 5 are wrong.

Director contends that COLs 8 and 9 are wrong. COLs 8 and 9 provide:

> 8. The decision is affirmed on the ground that the Planning Director's denial of the Calvert Variance Application was issued after the 60-day period for action on the application had expired and that, as a result, the application was automatically granted pursuant to HRS §91-13.5.

> 9. Because of this Court's conclusion that the Variance Application was approved as a matter of law on August 8, 2005, the Court does not reach the other issues considered by the Board of Appeals in its Decision and Order filed November 19, 2007.

Because HRS § 91-13.5 does not apply to Calvert's variance application, Calvert's application could not have been automatically approved by operation of law upon the Director's failure to act on the application within the 60-day deadline. Therefore COLs 8 and 9 are wrong.

Director argues that COL 10 is wrong. COL 10 states that "[b]ased on the foregoing, the [BOA's] Decision and Order is affirmed." Because this court concludes that the "foregoing"

7

analysis in the circuit court's FOF/COL/Order was wrong, we conclude that COL 10 is wrong as well.

### IV. CONCLUSION

We vacate the Judgment filed on August 29, 2008 in the Circuit Court of the Third Circuit and remand this case to the circuit court for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, June 22, 2010.

On the briefs:

Amy G. Self
Katherine A. Garson
Deputies Corporation Counsel
for Appellant-Appellant.

Renee N.C. Schoen
Brooks L. Bancroft
Deputies Corporation Counsel
for Appellees-Appellees Board
of Appeals of the County of
Hawai'i and Valta Cook.

Roy A. Vitousek III
Elijah Yip
(Cades Schutte, LLLP)
for Appellee-Appellee
Marlene E. Calvert.

Chief Judge

Associate Judge

Associate Judge

8